# CIRCUIT COURT OF THE CITY OF NORFOLK

Bay Point Condominium
Association, Inc.,
and Board of Directors
of the Bay Point
Condominium Association

v.

RML Corp.
and Dryvit Systems, Inc.

v.

Kemp Contracting et al.

## Case No. (Law) L99-475

BY JUDGE JOSEPH A. LEAFE

July 18, 2000

Bay Point Condominium Association, Inc., and the Board of Directors of the Bay Point Condominium Association commenced the present action against RML Corporation (hereinafter "RML") and Dryvit Systems, Inc. (hereinafter "Dryvit") seeking damages for alleged defects in the construction of the Bay Point Condominium complex. In its Second Amended Motion for Judgment, the plaintiffs allege the following: Construction of the condominium complex began in 1996 "and is still ongoing." *Plaintiffs' Second Amended Motion for Judgment* (hereinafter "*Mot. for Jud.*"), ¶ 7. RML is the general contractor and builder of the condominium units and common elements of the complex in question. Dryvit is a Rhode Island corporation that manufactured the Exterior Insulation Finish System (hereinafter "EIFS"), also known as "synthetic stucco," that was used by RML in the construction of the condominium complex. The plaintiffs allege severe structural defects in the form of interior and exterior wood rot and decay resulting from failure of the EIFS to prevent water intrusion into the walls.

The plaintiffs allege the following causes of action against Dryvit: breach of implied warranty of merchantability (Count VII); breach of implied warranty of fitness for a particular purpose (Count VIII); negligence (Count IX); actual fraud (Count X); negligent misrepresentation (Count XI); civil conspiracy (Count XII); constructive fraud (Count XIII); violation of Virginia's Consumer Protection Act, Va. Code §§ 59.1-196 *et seq.* (Count XIV); and violation of Virginia's deceptive advertising statute, Va. Code § 18.2-216. On January 27, 2000, Dryvit filed Demurrers to each of the above claims; a Special Plea of the Statute of Limitations as to Counts X, XI, XII, XIV, and XV; and a Motion Craving Oyer.

## I. *The Demurrers*

### A. *The Standard for a Demurrer*

A demurrer challenges the legal sufficiency of factual allegations and shall be granted if the plaintiff's pleadings do not state a cause of action or fail to state facts upon which relief can be granted. Va. Code § 8.01-273 (Michie 1950); *Fun v. Virginia Military Inst.*, 245 Va. 249, 427 S.E.2d 181 (1993). A demurrer admits the truth of all facts properly pleaded, and all reasonable factual inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading. *Fox v. Custis*, 236 Va. 69, 372 S.E.2d 373 (1988). Further, the Virginia Supreme Court has warned the trial courts against incorrectly short-circuiting litigation at the pretrial level by deciding the dispute without permitting the parties to reach a trial on the merits. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 431 S.E.2d 277 (1993). Thus, in deciding whether or not the plaintiffs have stated a valid cause of action or facts upon which relief can be granted, this Court must accept as true all facts and reasonable inferences drawn from the plaintiffs' Second Amended Motion for Judgment.

### B. *Count IX: Negligence*

Dryvit demurs to Count IX of the plaintiffs' Second Amended Motion for Judgment on the ground that any tort claim against Dryvit for damages to the condominium complex are barred by the economic loss rule. The economic loss rule limits "tort recovery against parties not in privity with the purchaser of a product to cases in which negligent manufacture or design has resulted in a product which constitutes a danger to the *safety* of persons or property other than the product itself." *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 424, 374 S.E.2d 55, 57 (1988) (emphasis in original). The Virginia Supreme Court has repeatedly applied the economic loss rule within the context of building construction litigation. *See Blake Const. Co. v. Alley*, 233 Va. 31, 353 S.E.2d 724 (1987); *Sensenbrenner, supra*; and *Rotonda Condo. Owners v. Rotonda Assocs.*, 238 Va. 85, 380 S.E.2d 876 (1989). In *Blake*, the Commonwealth of Virginia entered into two contracts, one with a builder and another with an architect, relating to the construction of an office building. Although there was no privity of contract between the builder and the architect, the builder sued the architect for damages resulting from negligence in the performance of the architects' duties under their contract with the Commonwealth. The builder relied on § 8.01-223 of the Code of

Virginia which abolished the lack-of-privity defense in actions for damages to persons or property resulting from negligence. The architects demurred to the negligence claim on the ground that the common law barred a party not in privity to recover damages where there is no physical injury to person or property.

The Virginia Supreme Court held that Code § 8.01-223, being in derogation of the common law rule of privity in tort actions, was to be strictly construed according to its terms. Because Code § 8.01-223 expressly limits its application to cases involving injuries to person or property, the *Blake* Court held that the statute did not apply to claims for purely economic losses. Thus, the builder's lack of privity with the architect barred the builder from bringing any tort action against the architect.

The Virginia Supreme Court applied the rule in *Blake* against landowners who brought a negligence action against an architect and swimming pool subcontractor who had been engaged by the general contractor with whom the landowners had contracted. *Sensenbrenner, supra.* The plaintiffs in *Sensenbrenner* contracted with the general contractor for the construction of a new home, which was to include an enclosed swimming pool. The landowners filed tort actions against the architect and pool subcontractor alleging that the negligent design by the architect and negligent construction by the subcontractor in building the pool on fill material as opposed to natural soil caused the pool to settle. The settling of the pool in turn caused water pipes to break, resulting in structural damage to the pool as well as the house.

The defendants demurred to the plaintiff's negligence claims on the ground that the claimed damages amounted to economic loss for which there could be no recovery in tort in the absence of privity of contract. The plaintiffs argued that the economic loss rule articulated in *Blake* did not apply because they were claiming damages for injury to property, not purely economic loss. The Virginia Supreme Court began its analysis by articulating the policy behind the economic loss rule:

> The law of torts is well equipped to offer redress for losses suffered by reason of a "breach of some duty imposed by law to protect the broad interests of social policy." . . . Tort law is not designed, however, to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages which were within the contemplations of the parties when framing their agreement. It remains the particular province of the law of contracts.

*Sensenbrenner*, 236 Va. at 425, 374 S.E.2d at 58 (citations omitted). Thus, in ruling for the defendants, the Court held:

> The plaintiffs here allege nothing more than disappointed economic expectations. They contracted with a builder for the purchase of a package. The package included land, design services, and construction of a dwelling. The package also included a foundation for the dwelling, a pool, and a pool enclosure. The package is alleged to have been defective — one of more of its component parts was sufficiently substandard as to cause damage to other parts. The effect of the failure of the substandard parts to meet the bargained-for level of quality was to cause a diminution in the value of the whole, measured by the cost of repair. *This is purely economic loss, for which the law of contracts provides the sole remedy.*

*Id.* (emphasis added).

The present plaintiffs argue that the economic loss rule does not apply under the facts of the present case:

> Plaintiffs' motion for judgment alleges damage to property other than the synthetic stucco cladding sold by defendant Dryvit. In fact, plaintiffs' contention is that Dryvit's product caused damage to the components of their house by failing to provide an adequate moisture barrier. The facts, as alleged, clearly establish that defects in the synthetic stucco system manufactured by Dryvit caused injury to *other property* — namely, to framing, sheathing, joists, studs, windows, doors, etc. As such, plaintiffs' injuries consist of property damage, and not "economic loss."

*Plaintiffs' Memorandum in Opposition to Demurrer* (hereinafter *"Pl. Memo."*), 15 (emphasis in original) (citations omitted). However, the Virginia Supreme Court's rulings in *Blake* and *Sensenbrenner* do not support the plaintiffs' argument. In the present case, the plaintiffs contracted with a builder for the purchase of a package, including the design services and construction of a condominium complex. The plaintiffs now allege that the package is defective in that one of its component parts, the EIFS insulation system, is sufficiently substandard as to cause damage to other parts of the complex, namely, the "framing, sheathing, joists, studs, windows, doors, etc." *Id.* Thus, the Virginia Supreme Court's ruling in *Sensenbrenner* is squarely on point with the facts of the present case. Here, as in *Sensenbrenner*, the

effect of the alleged failure of the substandard parts to meet the bargained-for level of quality caused a diminution in the value of the condominium complex, measured by the cost of repair. This is not an injury to person or property for which the law of torts offers redress. Rather, the plaintiffs claim a purely economic loss for which the law of contracts provides the sole remedy.

The plaintiffs next argue that they have alleged a cause of action for negligence *per se* under Virginia's Uniform Statewide Building Code, Va. Code §§ 36-97 *et seq.*, and that such cause of action is not barred by the economic loss rule:

> Plaintiffs have alleged a cause of action based on Dryvit's violation of the Virginia Building Code. "A violation of the Building Code, like the violation of any statute enacted to protect public health, safety, and welfare, is negligence *per se.*" *MacCoy v. Colony House Builders, Inc.*, 239 Va. 64, 69, 387, S.E.2d 760, 763 (1990) (*citing VEPCO v. Savoy Construction Co.*, 224 Va. 36, 45, 294 S.E.2d 811, 817 (1982)). The duty to perform in accordance with the standards of the Building Code is independent from the duties required under the contract.

*Pl. Memo.*, 19-20. However, nowhere in their Second Amended Motion for Judgment have the plaintiffs alleged any violation of the Virginia Building Code on the part of Dryvit. Further, even if the plaintiffs had so alleged, such allegation would not support a cause of action for negligence. The Virginia Building Code governs "the *construction of* buildings and structures, and the equipment therein as defined in § 36-97 . . . ."[1] Va. Code § 36-99 (emphasis added). The plaintiffs argue that "Dryvit failed to obtain approval for its EIFS System from local officials prior to placing EIFS on the market in the Norfolk area." *Pl. Memo.*, 21. However, the Code does not prescribe regulations governing the manufacturing or sale of building materials such as the EIFS in question. In the cases cited by the plaintiffs, the Virginia Supreme Court addressed the issue of whether the defendant contractor was liable in tort for failure to install equipment in accordance with relevant provisions of the Virginia Building Code. *MacCoy v. Colony House Builders, Inc.*, 239 Va. 64, 387 S.E.2d 760 (1990); *VEPCO v. Savoy Const. Co.*, 224 Va. 36, 294 S.E.2d 811 (1982). By contrast, the present plaintiffs ask this Court to apply the

---

[1] Va. Code § 36-97 states, "'Equipment' means plumbing, heating, electrical, ventilating, air-conditioning and refrigeration equipment, elevators, dumbwaiters, escalators, and other mechanical additions or installations."

Virginia Building Code as the basis of a cause of action in tort against not only the contractor who installed the allegedly defective building materials, but also the remote manufacturer of such building materials. The provisions of the Virginia Building Code prescribe building regulations to be complied with in the construction of buildings and structures. It may not be used as the basis for a cause of action in tort against the remote manufacturer of the allegedly defective building materials employed by the builder or contractor in the construction of such buildings and structures. Thus, the plaintiffs have failed to allege facts sufficient to support a cause of action for ordinary negligence or negligence *per se* against Dryvit.

## C. *Count VII: Breach of Implied Warranty of Merchantability*

In Count VII, the plaintiffs charge Dryvit with breach of implied warranties of merchantability. As a preliminary matter, it is important to determine whether the alleged warranty agreements are primarily for services or goods. The following analysis follows the ruling of the United States Court of Appeals for the Fourth Circuit in *Coakly & Williams, Inc. v. Shatterproof Glass Corp.*, 706 F.2d 456 (4th Cir. 1983), which held under a similar fact pattern that the nature of the alleged warranty agreements cannot be decided at the demurrer stage and will be treated as agreements for the sale of goods. Thus, the UCC provides the governing statutes.

Dryvit contends that the absence of privity between itself and the plaintiffs bars the plaintiffs' claims for economic loss under a breach of warranty theory. Code § 8.2-318 reads:

> Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods . . . .

Notwithstanding the language of Code § 8.2-318, the Virginia Supreme Court has held that privity of contract is required for recovery of consequential economic loss damages in a claim for breach of warranty. *Beard Plumbing and Heating, Inc. v. Thompson Plastics, Inc.*, 254 Va. 240, 491 S.E.2d 731 (1997). In *Beard*, a plumbing subcontractor installed defective PCV fittings in the homes of a condominium project. The defective fittings were purchased

from third-party suppliers and no contract existed between the manufacturers of the fittings and the subcontractor. After the defective fittings leaked and caused damage to the homes, the general contractor required the plumbing subcontractor to replace the fittings and to repair the damage to the homes that was caused by the defective fittings. The subcontractor filed suit against the manufacturers alleging, *inter alia*, breach of warranty. Thus, the Court addressed the question of whether privity is required to recover consequential economic loss damages under Code § 8.2-715(2) due to breach of warranty, notwithstanding the language of Code § 8.2-318.

Code § 8.2-715(2) provides:

Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty.

The *Beard* Court began its analysis by noting that the phrase "at the time of contracting" in Code § 8.2-715(2)(a) creates a presumption that there is a contract between the parties. For this reason, the Court held that Code § 8.2-715(2) requires privity of contract for the recovery of consequential economic loss damages incurred as a result of a breach of warranty by the seller. *Beard*, 254 Va. at 245, 491 S.E.2d at 733-34. The Court next resolved the apparent conflict between Code § 8.2-318 and § 8.2-715(2) by applying the rule of statutory construction that, if one section of a statute addresses a subject in a general way and the other section speaks to part of the same subject in a more specific manner, the latter prevails. It should be noted that the Virginia Supreme Court expressly limited its discussion to breach of warranty claims for consequential economic loss damages, stating, "we assume that the Court of Appeals concluded that the economic loss damages claimed by Beard were consequential damages rather than direct damages." *Beard*, 254 Va. at 244, 491 S.E.2d at 733. The Court also stated:

The general subject of § 8.2-318 is the ability to raise the common law requirement of privity as a defense . . . . Section 8.2-715(2)(a) does not address the general subject of the common law privity requirement's effect on the ability of a litigant to maintain an action for breach of warranty. It is limited to that part of the litigation

> dealing with the damages which may be recovered and imposes a
> contract requirement only where recovery of consequential damages
> is sought.

*Id.* at 246, 491 S.E.2d at 734. Indeed, the Court's holding is based on the language of § 8.2-715(2), which expressly calls for the existence of a contract between the parties for recovery of consequential damages. Thus, the applicability of the Court's holding in *Beard* is limited to cases where a plaintiff is claiming consequential economic loss damages due to a breach of warranty.

Applying the above stated principles to the facts of the present case, the plaintiffs may not recover consequential economic loss damages under Code § 8.2-715(2) absent privity of contract. Nowhere in their Second Amended Motion for Judgment have the plaintiffs alleged the existence of a contract between themselves and Dryvit. Therefore, the plaintiffs are barred under the Virginia Supreme Court's ruling in *Beard* from asserting any claim for consequential economic loss damages due to breach of warranty under Code § 8.2-715(2).

However, the UCC provides that the measure of direct damages for breach of warranty is as follows:

> the difference at the time and place of acceptance between the value
> of the goods accepted and the value they would have had if they had
> been as warranted, unless special circumstances show proximate
> damages of a different amount.

Va. Code § 8.2-714(2). As opposed to the statute governing consequential damages considered by the Court in *Beard*, the UCC's provision governing the measure of direct damages in a breach of warranty claim does not condition the award of damages on the existence of a contract. Under Code § 8.2-318, lack of privity shall be no defense in an action brought against a manufacturer to recover damages for breach of express or implied warranties if the plaintiff is a person whom the manufacturer might reasonably have expected to use or be affected by the goods. Thus, under Code § 8.2-714(2), the plaintiffs may assert a claim for direct damages consisting of the difference between the value of the EIFS accepted and the value such EIFS would have had if it had been as warranted, unless the facts of the case show proximate damages of a different amount.

D. *Count VIII: Breach of Implied Warranty of Fitness for a Particular Purpose*

In accordance with the above analysis on consequential and direct economic loss damages, an underlying contract between the plaintiffs and Dryvit is required for the plaintiff to recover consequential economic loss damages under a theory of breach of implied warranty of fitness for a particular purpose. However, the plaintiffs may assert a claim for direct damages consisting of the difference between the value of the EIFS accepted and the value such EIFS would have had if it had been as warranted, unless the facts of the case show proximate damages of a different amount.

E. *Count X: Actual Fraud*

In Count X of their Second Amended Motion for Judgment, the plaintiffs charge Dryvit with actual fraud. Dryvit demurs to the plaintiffs' fraud claim on the ground that the plaintiffs have failed to allege facts sufficient to support such claim. Specifically, Dryvit contends:

> plaintiffs: (1) fail to plead fraud with particularity; (2) allege only vague and indefinite statements upon which any reliance is unjustified; (3) allege mere unfulfilled promises to future events; (4) allege misrepresentations that have no causal connection to plaintiffs' alleged damages; and (5) fail to allege a recognized common law duty of Dryvit to disclose the allegedly undisclosed information to plaintiffs; and (6) cannot turn a breach of contract claim into a tort claim with vague allegations of fraud.

*Dryvit's Brief in Support of Demurrers and Special Pleas (hereinafter "Dryvit Brief"),* 5.

The elements of actual fraud are: (1) a false representation, (2) of a material fact, (3) made intentionally or knowingly, (4) with the intent to mislead, (5) reliance by the misled party, and (6) injury to the misled party. *Winn v. Aleda Const. Co.,* 227 Va. 304, 315 S.E.2d 193 (1984). In Virginia, a claim of fraud must be pleaded with particularity in order to allow the defendant to properly shape his defense. *Mortarino v. Consultant Engineering Services,* 251 Va. 289, 467 S.E.2d 778 (1996).

First, Dryvit's argument that the plaintiffs' claims amount merely to a claim of fraudulent nondisclosure is misplaced. The plaintiffs have alleged that Dryvit representatives intentionally and knowingly made affirmative false

representations to the plaintiffs regarding, among other things, the durability, quality, and characteristics of EIFS, the adequacy of Dryvit's testing of EIFS, the history of water intrusion behind the EIFS barrier from various sources, and government approvals of EIFS. *Mot. for Jud.,* ¶¶ 81-89. The plaintiffs have, therefore, alleged more than fraudulent nondisclosure. The plaintiffs have alleged that Dryvit committed fraud by breaching its duty to the plaintiffs to abstain from knowingly and affirmatively misrepresenting material facts concerning EIFS. Second, contrary to Dryvit's assertions otherwise, these alleged misrepresentations amount to material misrepresentations of present fact and are not mere promises of future performance. The plaintiffs have also alleged specific injuries as a result of the alleged misrepresentations. *Id.*

What is less clear is whether the plaintiffs have alleged facts demonstrating reasonable reliance on the alleged misrepresentations of Dryvit to their detriment. The Virginia Supreme Court has stated that "to establish fraud, it is essential that the defrauded party demonstrate the right to reasonably rely upon the misrepresentation." *Metrocall of Delaware, Inc. v. Continental Cellular Corp.,* 246 Va. 365, 374, 437 S.E.2d 189, 193-94 (1993). In their Second Amended Motion for Judgment, the plaintiffs allege:

> Plaintiff did, without the knowledge of the falsity of the representations, directly or indirectly, justifiably act upon those willful misrepresentations and omissions to their injury, as evidenced by the installation of EIFS on their residence.

*Mot. for Jud.,* ¶ 84. However, even on Demurrer, the Court is not bound by such a bare and conclusory statement, especially where the plaintiff is required to allege facts to support each element of the cause of action with particularity.

The facts alleged show that the plaintiffs entered into a contract with RML to construct the subject condominium complex and that the plaintiffs relied on RML to construct the condominium complex with the care and skill necessary to meet the bargained for standard of quality. Nowhere is it alleged that the plaintiffs were in any way involved in the decision as to what exterior insulation to employ in the construction of the condominium complex or that the plaintiffs in any way relied on the alleged misrepresentations of Dryvit in entering into the construction contract with RML. Nor have the plaintiffs otherwise alleged facts demonstrating the manner in which they relied on the alleged misrepresentations. Thus, the plaintiffs have failed to allege facts sufficient to support a claim of actual fraud.

## F. *Count XI: Negligent Misrepresentation*

Dryvit demurs to Count XI on the ground that Virginia does not recognize a separate and independent cause of action for negligent misrepresentation. The plaintiffs argue that the Virginia Supreme Court recognized a cause of action for negligent misrepresentation in *Mortarino v. Consultant Engineering Services, Inc.*, where the Court stated:

> We have stated that the elements of a cause of action for constructive fraud are a showing by clear and convincing evidence that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation . . . .

251 Va. 289, 295, 467 S.E.2d 778, 782 (1996). While the essence of a cause of action for constructive fraud may be negligent misrepresentation, it does not follow that there exists a separate and independent cause of action for negligent misrepresentation. Indeed, the plaintiffs have failed to cite a single case from the Virginia Supreme Court or the Virginia Court of Appeals that recognizes an independent cause of action for negligent misrepresentation. Where negligent misrepresentation has been alleged, it has been so alleged only as the basis for a claim of fraud. *Richmond Metropolitan Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 558-59, 507 S.E.2d 344, 347 (1998); *Mortarino*, 251 Va. at 294-95, 467 S.E.2d at 781-82; *Jefferson Standard Life Ins. Co. v. Hendrick*, 181 Va. 824, 832-34, 27 S.E.2d 198, 201-02 (1943); and *Bradley v. Tolson*, 117 Va. 467, 472, 85 S.E.2d 466, 467 (1915). The Virginia Supreme Court has not, however, recognized a separate and independent cause of action for negligent misrepresentation and this Court declines to do so in this case.

## G. *Count XII: Civil Conspiracy*

In Count XII, the plaintiffs charge Dryvit with civil conspiracy. In order to state a cause of action for civil conspiracy, the plaintiff must allege facts demonstrating "an agreement between two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, resulting in damage to the plaintiff." *Glass v. Glass*, 228 Va. 39, 41, 321 S.E.2d 69, 74 (1984). The present plaintiffs allege that:

> Dryvit, other manufacturers, and other members of EIMA reached an express agreement or tacit understanding to suppress knowledge

about the defects and hazards of EIFS while marketing EIFS without adequate testing or warning.

*Mot. for Jud.,* ¶ 103. Dryvit demurs to the plaintiffs' claim, arguing:

plaintiffs fail to allege the existence [of] any fiduciary or other special relationship between Dryvit and the plaintiffs that would impose upon Dryvit a duty to disclose the allegedly suppressed information.

*Dryvit's Brief,* 11.

As stated above, the plaintiffs have alleged that Dryvit representatives intentionally and knowingly made affirmative false representations to the plaintiffs regarding, among other things, the durability, quality, and characteristics of EIFS, the adequacy of Dryvit's testing of EIFS, the history of water intrusion behind the EIFS barrier from various sources, and government approvals of EIFS. *Mot. for Jud.,* ¶¶ 81-89. The plaintiffs have, then, alleged more than simple fraudulent nondisclosure. The plaintiffs have alleged that Dryvit committed fraud by breaching its duty to the plaintiffs to abstain from knowingly and affirmatively misrepresenting material facts concerning EIFS.

Of more pressing concern is the plaintiffs' failure to allege facts constituting a conspiracy. A conspiracy consists of an agreement between two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Glass,* 228 Va. at 41, 321 S.E.2d at 74. While the plaintiffs may have alleged an unlawful purpose on the part of Dryvit, they have failed to specify the individuals or entities with which Dryvit conspired to achieve such unlawful purpose. It is vital that the plaintiffs allege the parties to the alleged conspiracy in order that Dryvit may adequately respond to the plaintiffs' claim and adequately prepare its defense. The plaintiffs' assertion that Dryvit conspired with "other manufacturers" is not sufficient to place Dryvit on notice of the nature of the claims against it.

## H. *Count XIII: Constructive Fraud*

In Count XIII, the plaintiffs charge Dryvit with constructive fraud. However, this claim fares no better than the plaintiffs' claim of actual fraud. Constructive fraud requires proof by clear and convincing evidence that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of reliance upon the misrepresentation. *Richmond Metropolitan Auth. v. McDevitt Street Bovis, Inc.,* 256 Va. 553, 507

S.E.2d 344 (1998). The plaintiffs allege that Dryvit made false representations to the plaintiffs through widespread advertising regarding the ability of EIFS to prevent water intrusion, the nature and properties of EIFS and the life-expectancy and post insulation maintenance of EIFS. *Mot. for Jud.*, ¶ 110. The plaintiffs further allege that they "reasonably and justifiably relied on Dryvit's omissions of the foregoing material facts to Plaintiffs' detriment." *Id.* ¶ 112. However, as stated above, the plaintiffs have failed to allege facts demonstrating how the plaintiffs relied on the alleged negligent or intentional misrepresentations of Dryvit. Again, the bare conclusory statement that the plaintiff somehow relied upon the alleged misrepresentations of Dryvit is insufficient to state a claim of fraud, constructive or actual.

## I. *Count XIV: Violation of Virginia's Consumer Protection Act*

In Count XIV of their Second Amended Motion for Judgment, the plaintiffs charge Dryvit with violations of Virginia's Consumer Protection Act (hereinafter "VCPA"), Va. Code §§ 59.1-196 *et seq.* In support of their charge, the plaintiffs state:

The Defendants, collectively and individually, violated the Virginia Consumer Protection Act by: (a) misrepresenting their goods and services, specifically EIFS product and construction of Plaintiffs' homes, as having certain qualities, characteristics, ingredients, uses and/or benefits; (b) advertising or offering for sale goods which were defective, without clearly and unequivocally indicating in the advertisements or offer of sale that the goods were defective; (c) misrepresenting that the "stucco" was a quality product; (d) misrepresenting that Defendants' services were of a particular quality or standard; (e) advertising goods or services with intent not to sell them as advertised, namely, as a first class building material; (f) offering for sale defective goods; and (g) using deception, fraud, false pretense, false promise and/or misrepresentation in connection with a consumer transaction.

*Mot. for Jud.*, ¶ 116. Dryvit demurs to the plaintiffs' claim under the VCPA, arguing that the statute does not apply to the transactions that are the subject of this litigation.

The VCPA makes it unlawful for a supplier in connection with a consumer transaction to engage in certain acts, including:

[m]isrepresenting that goods or services have certain qualities, characteristics, ingredients, uses, or benefits . . . [m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model . . . [and] [u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction . . . .

Va. Code § 59.1-200. Any person who suffers loss as the result of a violation of the VCPA may recover actual damages, reasonable attorney's fees, and court costs from the offending party. *Id.* § 59.1-204. The present litigation concerns the sale of EIFS to a builder for use in the construction of a condominium complex and the sale of individual condominium units to the private owners on whose behalf the plaintiffs have filed suit. Thus, in order to determine whether these transactions are within the scope of the VCPA, one must examine whether the subject transactions constitute "consumer transactions" as those terms are defined under the VCPA.

The VCPA defines "consumer transaction" as, in pertinent part, "[t]he advertisement, sale . . . or offering for sale . . . of goods or services to be used primarily for personal, family, or household purposes." *Id.* § 59.1-198. "Goods" are defined as "all real, personal, or mixed property, tangible or intangible." *Id.* Finally, the term "supplier" is defined as "a seller . . . who advertises, solicits, or engages in consumer transactions, or a manufacturer or distributor who advertises and sells . . . goods or services to be resold . . . by other persons in consumer transactions." *Id.*

In *Winchester Homes, Inc. v. Hoover Universal, Inc.*, 27 Va. Cir. 62 (Fairfax County 1992) (Plummer, J.), the Fairfax County Circuit Court held that sale of building materials from a manufacturer to a general contractor for use in the construction of a home was a commercial transaction and, therefore, did not fall within the definition of a "consumer transaction" as envisioned by the VCPA. In the present case, the sale of EIFS from Dryvit to RML is best characterized as a commercial transaction. Specifically, the EIFS was not sold to the plaintiffs for personal, family, or household purposes. Indeed, the EIFS was not sold to the plaintiffs at all. Rather, the EIFS was sold by Dryvit to RML for use as a component part in the construction of the condominium complex. Such use cannot be characterized as "personal, family, or household" use. The transaction between Dryvit and RML is a commercial transaction involving non-consumer goods and is, therefore, not governed by the various provisions of the VCPA.

## J. Count XV: Violation of Virginia's Deceptive Advertising Statutes

Count XV of the Second Amended Motion for Judgment seeks damages against Dryvit for alleged deceptive advertising under two provisions of the Virginia Code. Code § 18.2-216 provides, in pertinent part:

> Any person, firm, corporation or association who, with intent to sell or in any way dispose of merchandise . . . service or anything offered by such person, firm, corporation or association, directly or indirectly, to the public for sale . . . or with the intent to increase the consumption thereof, or to induce the public in any manner to enter into any obligation relating thereto, makes, publishes, disseminates, circulates, or places before the public, or causes, directly or indirectly to be made, published, disseminated, circulated or placed before the public, directly or indirectly . . . in the form of a book, notice, handbill . . . or in any other way, an advertisement of any sort regarding merchandise . . . or anything so offered to the public, which advertisement contains any promise, assertion, representation or statement of fact which is untrue, deceptive or misleading, or uses any other method, device or practice which is fraudulent, deceptive or misleading to induce the public to enter into any obligation, shall be guilty of a Class 1 misdemeanor.

Code § 59.1-68.3 provides a civil remedy for a violation of § 18.2-216, stating, in pertinent part:

> Any person who suffers loss as the result of a violation of Article 8 (§ 18.2-214 et seq.) . . . shall be entitled to bring an individual action to recover damages, or $100, whichever is greater . . . .

Dryvit demurs to the plaintiffs' deceptive advertising claim on two grounds. Dryvit first argues that the plaintiffs' failure to assert a criminal conviction under Code § 18.2-216 is fatal to the plaintiffs' claim for damages under Code § 59.1-68.3. However, Dryvit points to no ruling by a court in this Commonwealth in which a criminal conviction was held to be a prerequisite to recovery under Virginia's deceptive advertising statutes. Although the Virginia Supreme Court has not addressed this issue, the United States District Court for the Eastern District of Virginia has consistently held that a cause of action exists under Code §§ 18.2-214 *et seq.* and 59.1-68.3 even if there has been no successful criminal prosecution. *See H. D. Oliver Funeral Apts., Inc.*

*v. Dignity Funeral Services, Inc.*, 964 F. Supp. 1033 (E.D. Va. 1997); and *Maldonado v. Nutri/System, Inc.*, 776 F. Supp. 278 (E.D. Va. 1991). Further, neither Code § 18.2-216 nor § 59.1-68.3 explicitly call for a criminal conviction prior to recovery of civil damages. Rather, Code § 59.1-68.3 merely requires a "violation" of Code § 18.2-214 *et seq.* in order for a plaintiff to recover civil damages. A successful criminal conviction is not a prerequisite to recovery under Code §§ 18.2-216 and 59.1-68.3. Thus, the plaintiffs' claim of deceptive advertising is not demurrable due to the plaintiffs' failure to allege a criminal conviction under Code § 18.2-214 *et seq.*

Dryvit next argues that the plaintiffs' deceptive advertising claim is, "at its core . . . a fraud claim," and that the plaintiffs have failed to allege facts to support such claim with the requisite degree of particularity. *Dryvit Brief*, 12. Code § 18.2-216 prohibits any form of advertising which uses any "promise, assertion, or statement of fact which is untrue, deceptive, or misleading, or uses any other . . . practice which is fraudulent, deceptive, or misleading" for the purpose of inducing the public to "enter into any obligation." Dryvit points to no authority which states that a cause of action under Virginia's deceptive advertising statutes is tantamount to a claim of fraud. Indeed, Code § 18.2-216 requires only that the advertising material be untrue, deceptive, or misleading. Nowhere does the statute require the plaintiff to allege fraud on the part of the defendant. Neither has Dryvit cited authority requiring a plaintiff to allege a cause of action under Code §§ 18.2-216 and 59.1-68.3 with the particularity required of a plaintiff asserting a cause of action for fraud. In Count XV, the plaintiffs have alleged that Dryvit:

> disseminated . . . before the public and potential customers, including Plaintiffs, advertising information concerning the performance characteristics of EIFS, which were untrue, deceptive, and misleading so as to induce the public in general and Plaintiffs in particular to select . . . EIFS for use on their home.

*Mot. for Jud.*, ¶ 121. These allegations are sufficient to support a claim of deceptive advertising under Code §§ 18.2-214 *et seq.* and 59.1-68.3.

## II. *The Special Pleas*

### A. *The Standard for a Special Plea of the Statute of Limitations*

In Virginia the defendant bears the burden of proof to establish facts necessary to prevail on a Special Plea of the Statute of Limitations. *Lo v.*

*Burke*, 249 Va. 311, 316, 455 S.E.2d 9, 12 (1995). Dryvit must, then, demonstrate facts showing that the plaintiffs failed to file with this court the various causes of action asserted in their Second Amended Motion for Judgment in the time allowed under the applicable periods of limitation.

**B.** *Counts X, XII, and XIII: Actual Fraud, Constructive Fraud, and Civil Conspiracy*

Section 8.01-243 of the Code of Virginia prescribes the limitation period for fraud, stating, "every action for damages resulting from fraud, shall be brought within two years after the cause of action accrues." Code § 8.01-249 states, in relevant part, that a cause of action for fraud shall be deemed to accrue and the prescribed period of limitation shall commence to run from the date that the fraud is discovered or by the exercise of due diligence reasonably should have been discovered. The limitation period for a cause of action for civil conspiracy to commit a tort is the same as the limitation period for the underlying tort. *See Cherokee Corp. v. Chicago Title Ins. Corp.*, 35 Va. Cir. 19 (Warren County 1994) (Peatross, J.).

The present plaintiffs filed their original Motion for Judgment on June 28, 1999. Dryvit argues that the plaintiffs "must have discovered the alleged fraud prior to June 28, 1997, the date prior to which plaintiffs admit advising RML of the very problems for which they seek damages in this suit." *Dryvit Brief,* 14. Thus, says Dryvit, because the plaintiffs discovered the alleged fraud more than two years prior to their filing the original Motion for Judgment, the plaintiffs' claims for fraud, constructive fraud, and civil conspiracy to commit fraud are time barred. However, contrary to Dryvit's assertion, the plaintiffs have not admitted to discovery of the alleged fraud prior to June 28, 1997. In fact, the plaintiffs have expressly denied that they advised RML of defects in the EIFS prior to June 28. *See Plaintiffs' Response to Dryvit's Request for a Reply Pursuant to Rule 3:12 of the Rules of the Supreme Court of Virginia.* Even assuming that the plaintiffs discovered the alleged fraud and informed RML of defects in the EIFS on June 28, 1997, the plaintiffs were allowed two years from that date in order to file an action for fraud, i.e., the plaintiffs had until the end of the day on June 28, 1999, to file an action for fraud.

Dryvit bears the burden of proof to establish facts necessary to prevail on a Special Plea of the Statute of Limitations. The facts alleged do not establish that the plaintiffs had discovered, or in the exercise of due diligence should have discovered, the fraud alleged prior to June 28, 1997. Dryvit has, therefore, failed to carry its burden as the moving party on the Special Plea of the Statute of Limitations as to the plaintiffs' claims for actual and

constructive fraud. Because the limitation period for a cause of action for civil conspiracy to commit a tort is the same as the limitation period for the underlying tort, Dryvit has likewise failed to carry its burden with respect to the plaintiffs' claim of civil conspiracy to commit fraud.

## B. *Count XI: Negligent Misrepresentation*

As stated in Section I(F) of this opinion, it is the ruling of this Court that the plaintiffs may not maintain a cause of action against Dryvit for negligent misrepresentation. The Demurrer of Dryvit is sustained as to the plaintiffs' claim of negligent misrepresentation. Thus, this Court will not consider Dryvit's Special Plea of the Statute of Limitations as to such claim.

## C. *Count XIV: Violation of the Virginia Consumer Protection Act*

As stated in Section I(I) of this opinion, it is the ruling of this Court that the plaintiffs may not maintain a cause of action against Dryvit for alleged violations of the VCPA. The sale of EIFS from Dryvit to RML is a commercial transaction involving non-consumer goods and is, therefore, not governed by the various provisions of the VCPA. The Demurrer of Dryvit is sustained as to the plaintiffs' claim under the VCPA. Thus, the Court will not consider Dryvit's Special Plea of the Statute of Limitations as to such claim.

## D. *Count XV: Violation of Virginia's Deceptive Advertising Statutes*

In Court XV of their Second Amended Motion for Judgment, the plaintiffs seek damages against Dryvit for alleged deceptive advertising under Virginia's statutory deceptive advertising statutes. *See* Va. Code §§ 18.2-216 and 59.1-68.3. Dryvit argues that the plaintiffs' deceptive advertising claim is barred by the limitations period prescribed in Va. Code § 8.01-248, stating:

> Any cause of action plaintiffs may have had for deceptive advertising accrued at the latest in 1996 and was time-barred when plaintiffs filed this action against Dryvit on June 28, 1999. Plaintiffs argue that construction of the Condominium began in 1996. Second Amended Motion for Judgment, ¶ 7. Thus, plaintiffs allege that they were induced to construct an EIFS-clad condominium at the latest in 1996, three years prior to the filing of this lawsuit against Dryvit on June 28, 1999. Accordingly, Count XV is barred by the statute of limitations.

*Dryvit Brief*, 16. The plaintiffs argue that Dryvit's Special Plea of the Statute of Limitations should be denied, stating:

> Since, as argued above, the cause of action is a personal one for fraud, the relevant statute of limitations is two years. Virginia Code § 8.01-249 (Michie 1882). Alternatively, as also argued above, if Plaintiffs' cause of action is for property, the statute of limitations runs for five years. Plaintiffs have met both of these statutes of limitations as described above. Therefore, defendant's reliance on § 8.01-248 is misplaced as relevant statutes of limitations exist for plaintiffs' claims.

*Plaintiffs' Brief In Opposition to Dryvit's Demurrers and Special Pleas*, 10.

Code § 8.01-248 states, "[e]very personal action accruing on or after July 19, 1995, for which no limitation is otherwise prescribed, shall be brought within two years after the right to bring such action has accrued." Neither Code §§ 18.2-216 and 59.1-68.3 or any other provision of the Code prescribes a period of limitation applicable to claims of deceptive advertising. Because the plaintiffs' claim of deceptive advertising is a statutory cause of action for which no other limitations period is prescribed, Code § 8.01-248 governs and provides the applicable period of limitation.

This Court disagrees with the contention of the plaintiffs that the limitations period for claims of fraud or damage to property apply. As stated in Section I(J) of this opinion, a cause of action for deceptive advertising under Code §§ 18.2-216 and 59.1-68.3 is not tantamount to a claim of fraud. Code § 18.2-216 prohibits any form of advertising which uses any "promise, assertion, or statement of fact which is untrue, deceptive, or misleading, or uses any other . . . Practice which is fraudulent, deceptive, or misleading" for the purpose of inducing the public to "enter into any obligation." Code § 18.2-216 requires only that the advertising material be untrue, deceptive, or misleading. Nowhere does the statute require the plaintiff to allege fraud on the part of the defendant. Also, as stated in Section I(B) of this opinion, the plaintiffs may not maintain a cause of action against Dryvit for damages to property. Accordingly, Code § 8.01-248 provides the governing two-year period of limitation with respect to the plaintiffs' claim of deceptive advertising.

Virginia Code § 8.01-230 governs the accrual of rights of action and states:

In every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person or damage to property.

Pursuant to Code § 8.01-230, the two-year limitation period prescribed in Code § 8.01-248 began to run against the plaintiffs from the date that injury was sustained by the plaintiffs as a result of the alleged deceptive advertising of Dryvit. A plaintiff sustains injury as a result of deceptive advertising when the plaintiff purchases or consumes, based upon the deceptive or false advertising of the product's seller, a product that was not as advertised by the product's seller. In their Second Amended Motion for Judgment, the plaintiffs allege:

[Dryvit] disseminated . . . before the public and potential customers, including Plaintiffs, advertising information concerning the performance characteristics of EIFS, which were untrue, deceptive, and misleading so as to induce the public in general and Plaintiffs in particular to select . . . EIFS for use on their home.

*Mot. for Jud.,* ¶ 121. Thus, the plaintiffs' right of action against Dryvit for deceptive advertising accrued and the prescribed two-year limitations period began to run from the date that the plaintiffs or their agents purchased or otherwise selected EIFS as the exterior insulation system to employ in the construction of the condominium complex based on the allegedly deceptive advertising of Dryvit.

In their Second Amended Motion for Judgment, the plaintiffs allege that construction of the condominium complex "began in 1996 and is still ongoing." *Mot. for Jud.,* 3. While the facts alleged demonstrate when construction began on the condominium complex, the facts alleged by the plaintiffs do not show that the EIFS was purchased by the plaintiffs or their agents at the commencement of construction. The decision as to which exterior insulation material to employ in the construction of the condominium complex, and the subsequent purchase of such exterior insulation material, could have occurred at some point subsequent to the commencement of construction.

As the moving party, it is the burden of Dryvit to establish facts necessary to prevail on a Special Plea of the Statute of Limitations. The plaintiffs filed their original Motion for Judgment on June 28, 1999. In order to carry its burden, Dryvit must present evidence establishing that the allegedly defective

EIFS was purchased by the plaintiffs or their agents prior to June 28, 1997. At the present time, there is not sufficient evidence to establish the date on which the plaintiffs purchased the EIFS based upon the allegedly deceptive advertising of Dryvit. This Court, therefore, reserves judgment on Dryvit's Special Plea of the Statute of Limitations as to Count XV of the plaintiffs' Second Amended Motion for Judgment alleging violations of Virginia's deceptive advertising statutes.

## III. *Conclusion*

For the reasons stated above, this Court rules as follows:

1. The Demurrer of Dryvit to Count IX of the plaintiffs' Second Amended Motion for Judgment alleging negligence is sustained;

2. The Demurrer of Dryvit to Count VII is sustained to the extent that such Demurrer is based on the plaintiffs' claim for consequential economic loss damages due to breach of implied warranty of merchantability. However, the Demurrer is overruled to the extent that the plaintiffs seek direct economic loss damages as measured by Code § 8.2-714(2);

3. The Demurrer of Dryvit to Count VIII is sustained to the extent that such Demurrer is based on the plaintiffs' claim for consequential economic loss damages due to breach of implied warranty of fitness for a particular purpose. However, the Demurrer is overruled to the extent that the plaintiffs seek direct economic loss damages as measured by Code § 8.2-714(2);

4. The Demurrer of Dryvit to Count X of the plaintiffs' Second Amended Motion for Judgment alleging actual fraud is sustained;

5. The Demurrer of Dryvit to Count XI of the plaintiffs' Second Amended Motion for Judgment alleging negligent misrepresentation is sustained;

6. The Demurrer of Dryvit to Count XII of the plaintiffs' Second Amended Motion for Judgment alleging civil conspiracy is sustained;

7. The Demurrer of Dryvit to Count XIII of the plaintiffs' Second Amended Motion for Judgment alleging constructive fraud is sustained;

8. The Demurrer of Dryvit to Count XIV of the plaintiffs' Second Amended Motion for Judgment alleging violation of Virginia's Consumer Protection Act is sustained;

9. The Demurrer of Dryvit to Count XV of the plaintiffs' Second Amended Motion for Judgment alleging violation of Virginia's Deceptive Advertising Statutes is overruled;

10. The Court has addressed the Special Plea of the Statute of Limitations of Dryvit as to Counts X, XII, and XIII of the Plaintiffs' Second Amended Motion for Judgment alleging actual fraud, constructive fraud, and civil

conspiracy. No rulings will be made on these pleas at this time since Dryvit's Demurrers have been sustained. The pleas can be renewed if plaintiffs choose to amend these Counts as hereinafter provided;

11. In accordance with the Court's ruling on the Demurrer of Dryvit to Count XI of the plaintiffs' Second Amended Motion for Judgment alleging negligent misrepresentation, the Special Plea of the Statute of Limitations of Dryvit as to Count XI will not be considered by the Court;

12. In accordance with the Court's ruling on the Demurrer of Dryvit to Count XIV of the Plaintiff's Second Amended Motion for Judgment alleging violation of the Virginia Consumer Protection Act, the Special Plea of the Statute of Limitations of Dryvit as to Count XIV will not be considered by the Court; and

13. The Court reserves judgment on the Special Plea of the Statute of Limitations of Dryvit as to Count XV of the Plaintiffs' Second Amended Motion for Judgment alleging violation of Virginia's deceptive advertising statutes.

As to Counts X, XII, and XIII, alleging actual fraud, civil conspiracy, and constructive fraud, respectively, the plaintiffs are granted leave to amend their Motion for Judgment in accordance with this opinion within fourteen days.

September 20, 2000

This matter comes before the Court on several motions made by third-party defendants. The Plaintiff, Board of Directors of the Bay Point Condominium Association, Inc., filed a Motion for Judgment against RML Corporation, the builder and general contractor of Bay Point Condominium. Plaintiff then filed an amended Motion for Judgment adding Dryvit as a Defendant who manufactured the Exterior Insulation Finish Systems in question. On July 16, 1999, RML filed a Third-Party Motion for Judgment against a number of third-party defendants. Of these third-party defendants, many have filed different motions including Motions Craving Oyer, Motions for Bill of Particulars, Demurrers, and Motions to Sever. Each of these motions will be addressed separately in this opinion.

### Demurrers

Several of the third-party defendants have filed demurrers. These parties include (1) Kemp Contracting; (2) Scott Lowery; (3) Lincoln Window Products, Inc.; (4) Patriot Manufacturing; (5) Greenwich Supply Corp.; (6) John Ward/Eastern Window; (7) Barbini Contracting; (8) East Coast Cedar;

and (9) McDaniels Roofing Corp. The parties argue that the Third-Party Motion for Judgment fails to state any claim against them for which relief may be granted.

A demurrer tests the sufficiency of the factual allegations to determine whether the motion for judgment states a cause of action. *Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427 S.E.2d 181, 183 (1993). When ruling on a demurrer, the Court must not evaluate or decide the actual merits of a claim. *Id.* According to the Rules of the Supreme Court, the pleading "shall state the facts on which the party relies in numbered paragraphs, and it shall be sufficient if it clearly informs the opposite party of the true nature of the claim or defense." Rule 1:4(d); *see also Miller v. Grier S. Johnson, Inc.*, 191 Va. 768, 776, 62 S.E.2d 870, 874 (1951). The Virginia Supreme Court has stated that trial courts should not incorrectly short-circuit litigation at the pretrial stage by deciding the dispute without permitting the parties to have a trial on the merits. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 431 S.E.2d 277 (1993). Further, in deciding whether to grant the demurrers, the Court must accept as true all facts and reasonable inferences drawn from RML's Third-Party Motion for Judgment. *See Fox v. Custis*, 236 Va. 69, 372 S.E.2d 373 (1988).

In light of the standard for granting a demurrer and after a thorough review of the pleadings by RML, the Court finds that RML has stated sufficient facts in their Third-Party Motion for Judgment to survive a demurrer. When ruling on a demurrer, the Court must take as true all the allegations in the Motion for Judgment. *Fox, supra.* RML has pleaded sufficient facts to allow the case to proceed. Therefore the Defendants' demurrers are overruled.

## Motion Craving Oyer

Four third-party defendants filed motions craving oyer including Patriot Manufacturing Co. ("Patriot"), Scott Lowery/Lowery Construction ("Lowery"), D. M. Barbini Contracting ("Barbini"), and East Coast Cedar, Inc. ("East Coast"). In its Third-Party Motion for Judgment, RML characterizes and alleges that each of these parties "contracted" with RML to provide certain services and that each of these third-party defendants breached that contract. RML does not, however, refer to any specific contract nor did it attach any contract to its Third-Party Motion for Judgment. The third-party defendants crave oyer with respect to any such contract(s).

Insofar as any of the alleged contracts made by the Defendants are in writing or there is any documentation or other evidence of a contract,

indemnification, or any warranty(s) allegedly made by the defendants to RML, the Court grants the motion and requires RML to produce and annex as an exhibit any such documents that reflect the terms of any contract(s) so that they may become part of the record for the consideration of parties and the Court.

### Motion for Bill of Particulars

The same four defendants as above, Patriot, Lowery, Barbini, and East Coast, have filed motions for bills of particulars asking RML to set forth clear and precise statements with regard to each claim against them including negligence, breach of contract, breach of implied warranties, indemnification, contribution, joint and several liability/joint enterprise, and damages.

Pursuant to Rule 3:16 of the Rules of the Virginia Supreme Court, a bill of particulars may be ordered by the court on motion if the court feels it is necessary to "amplify any pleading."

While the allegations against these defendants in the Third-Party Motion for Judgment are sufficient to defeat the Demurrer, they are insufficient to inform them of the true nature of each claim in order to properly defend themselves. The Court therefore grants the four defendants' Motions for Bill of Particulars and orders RML to produce clear and precise statements of the facts and law upon which it relies in making its allegations against these third-party defendants. RML shall produce the contract documents and file its Bill of Particulars within fourteen days following entry of the order incorporating these rulings.

### Motion to Sever

Ten of the third-party defendants have filed motions to sever. They include: (1) Lincoln Window Products, Inc., (2) Patriot Manufacturing, (3) Peachtree Doors and Windows (by special appearance), (4) Greenwich Supply Corp., (5) John Ward, Eastern Window/Door, (6) Scott Lowery, (7) Barbini Contracting, (8) East Coast Cedar, (9) McDaniels Roofing Corp., and (10) Mill End, Carpet Fashions, Inc. These defendants assert that the nature of the claims asserted by the plaintiffs against RML and the claims asserted by RML against the third-party defendants involve different issues of contract and tort. They further assert that the theories against the third-party defendants are conditioned upon the finder of fact in the underlying suit returning judgment for Plaintiffs. They also claim that the jury would be confused.

Ordering separate trials is a matter of procedure within the sound discretion of the trial court. *Song et al. v. Ju,* 1993 WL 946 286 (Va. Cir. 1993), quoting *Dixon Livery Co. v. Bond,* 117 Va. 656 (1915). In exercising its discretion, the court must balance efficiency, convenience, and economical use of resources against prejudice. *Id.; see also Hampton Roads Sanitation Dist. v. City of Virginia Beach,* 240 Va. 209, 396 S.E.2d 656 (stating that the trial court severed the third-party action because the case was extremely complicated with many issues and would be too confusing for the jury). Severance should not be granted if it would prejudice any party's right to a fair resolution of the issues. Virginia Code § 8.01-267.1.

The Court has accordingly considered whom, if anyone, should remain in the direct suit. *See* Virginia Code § 8.01-267.1 and Rule 3:9A. Rule 3:9A allows a person to be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may either (a) impair or impede his ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. Rule 3:9A, Rules of the Virginia Supreme Court. Section 8.01-267.1 lists a number of factors to consider when joining a party including the convenience of the parties, whether there are common questions of law and fact that predominate, the likelihood that a jury would be confused, the likelihood of prejudice and inconsistent rulings, and the judicial efficiency of joining parties. *See* Virginia Code § 8.01-267.1.

Plaintiffs object to the motions to sever asserting that they will be severely prejudiced for two reasons: (1) the jury may attempt to hold that RML is not responsible for the acts of any alleged "independent contractor" subcontractor; and (2) the jury may attempt to hold that RML is not the guarantor of a defective product such as EIFS. Plaintiffs further contend that they will be severely prejudiced if the third-party defendants are severed.

RML also objects by arguing that under Rule 3:9A a party can join another party where "complete relief cannot be accorded among those already parties." *See* Rule 3:9A; § 8.01-267.1. They argue that in order to adequately and fairly resolve the matter, "the liability placed upon RML must be 'passed through' to the third-party defendants by way of consolidation of the claims." *Valley Co. v. Rolland,* 218 Va. 257, 237 S.E.2d 120 (1977). RML further asserts that, if they are liable, then they will have to bring sixteen separate causes of action against the subcontractors.

The present case involves over forty different counts and nineteen parties. RML has sued every supplier/manufacturer or subcontractor who was in any way connected to the construction project at issue in this case. Some of them supplied windows, others supplied doors, others installed carpeting, and still others worked on the outside decks. Further, some of the third-party defendants only worked on a few of the condominium units throughout the entire complex and many provided different services from the others. This would require RML to come forward with different and independent evidence to prove the allegations against a particular defendant. The Court finds that this will result in confusion for a jury. It would also be extremely burdensome on the third-party defendants with limited participation in the project or a more remote connection to the claimed damages.

Kemp Contracting did not file a motion to sever and in fact requested to remain in the direct suit since they actually installed the EIFS in the units and that is a principal issue in the case. Although the negligence of all the subcontractors is at issue, the installation of the EIFS is a main claim and issue. The Court finds that Kemp Contracting is essential to the resolution of the present action and full relief could not be afforded in their absence and therefore requires that they remain in the principal action. Plaintiffs would be severely prejudiced if they were absent.

In conclusion, the Court grants the Motions to Sever for all third-party defendants, except Kemp Contracting, which did not file a motion and, in any event, should remain.